## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CONTINENTAL RESEARCH | ) | |
| CORPORATION, GERALD SANOK | ) | |
| RICHARD STEELE, KURT WISE, | ) | |
| AND JAMES SHORE | ) | CASE NO. |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| DRUMMOND AMERICAN | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### INTRODUCTION

Plaintiffs Gerald Sanok (hereinafter "Gerald Sanok" or "Sanok"), Richard Steele (hereinafter "Richard Steele" or "Steele"), Kurt Wise (hereinafter "Kurt Wise" or "Wise"), and James Shore (hereinafter "James Shore" or "Shore") are all former sales representatives (hereinafter collectively referred to as the "Sales Representatives") of Defendant Drummond American Corporation (hereinafter "Defendant" or "Drummond"). In 2006, Drummond terminated Gerald Sanok and Richard Steele without cause. Also in 2006, Kurt Wise resigned from Drummond. In 2007, Drummond terminated James Shore without cause. Following their respective departures from Drummond, each of the Sales Representatives entered into an independent sales agent relationship with Plaintiff Continental Research Corporation (hereinafter "Continental"). After they accepted positions with Continental, Drummond sent demand letters to Gerald Sanok, Richard Steele and James Shore demanding that the individuals refrain from selling Continental products to certain customers that they encountered during their affiliation with Drummond. In support of Drummond's demand, Drummond cited certain non-compete

provisions appearing in the individuals' Agreements with Drummond.  Drummond's demand letters were also sent to Continental Research Corporation, care of its President Tom Epstein, in a threatening effort to prevent Continental from allowing the Sales Representatives to sell Continental's products in New York, Indiana and Tennessee.  Kurt Wise received a similar letter from Drummond demanding strict compliance with the non-compete provisions appearing in his alleged Agreement with Drummond.

During their tenure with Drummond, each of the Sales Representatives earned and accumulated significant bonus commissions that were held by Drummond in a fiduciary capacity pending the Sales Representatives' termination or retirement from Drummond.  Following their respective departures from Drummond, each of the Sales Representatives were entitled to receive 100% of the vested balances of the bonus commissions being held by Drummond.  Nonetheless, as of the date of filing this Complaint, Drummond has failed and refused to remit the vested balances owed to each of the Sales Representatives.

This complaint seeks relief in the nature of a declaratory judgment against Drummond (and other relief related to the Sales Representatives' unpaid bonus commissions) decreeing that the non-competition provisions contained within each of the Sales Representatives' alleged agreements with Drummond are void and unenforceable on grounds that such non-competition provisions are not necessary to support any legitimate business interest of Drummond, and on grounds that Gerald Sanok, Richard Steele, and James Shore were terminated from Drummond without cause.

## PARTIES

1.    Plaintiff Continental Research Corporation is a Missouri corporation with a principal place of business located at 1180 Central Industrial Drive, St. Louis, Missouri 63110.

2.      Plaintiff Gerald Sanok is an individual resident of the state of New York with a principal residence located at 1648 County Line Road, Alden, New York 14004.

3.      Plaintiff Richard Steele is an individual resident of the state of Indiana with a principal residence located at 4011 Morningside Drive, Bloomington, Indiana 47408.

4.      Plaintiff Kurt Wise is an individual resident of the State of Wisconsin with a principal residence located at 1004 North Cambridge Court, Wannakee, Wisconsin 53597.

5.      Plaintiff James Shore is an individual resident of the State of Tennessee with a principal residence located at 207 Fordham Way, Knoxville, Tennessee 37934.

6.      Defendant Drummond American Corporation is an Illinois Corporation with a principal place of business located at 1666 East Touhy Avenue, Des Plaines, Illinois 60018.

NATURE OF ACTION; JURISDICTION; VENUE

7.      Continental seeks relief against Drummond in the nature of declaratory judgments under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

8.      Gerald Sanok seeks relief against Drummond as follows: declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; breach of the New York Sales Representative Act, N.Y. Lab. Law, Article 6, § 191-A *et seq.;* breach of the Illinois Sales Representative Act, 820 ILCS 120; recovery of benefits under The Employee Retirement Income Security Act of 1974, 20 U.S.C. § 1001, *et seq.* ("ERISA"); common law breach of contract.

9.      Richard Steele seeks relief against Drummond as follows: declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; breach of the Indiana Sales Representative Act, Ind. Code § 24-4-7 *et seq.;* breach of the Illinois Sales Representative Act, 820 ILCS 120*; recovery of benefits under ERISA; common law breach of contract.

10.    Kurt Wise seeks relief against Drummond as follows: declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; breach of the Wisconsin Sales Representative Act, Wis. Stat. § 134.93 *et seq.;* breach of the Illinois Sales Representative Act, 820 ILCS 120; recovery of benefits under ERISA; common law breach of contract.

11.    James Shore seeks relief against Drummond as follows: declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; breach of the Tennessee Sales Representative Act, Tenn. Code Ann § 47-50-114 *et seq.;* breach of the Illinois Sales Representative Act, 820 ILCS 120; recovery of benefits under ERISA; common law breach of contract.

12.    This Court has subject matter jurisdiction over the claims made in this complaint under 28 U.S.C. § 1332, in that the amount in controversy (as set forth in Count II) exceeds Seventy-Five Thousand Dollars ($75,000.00) and all of the parties hereto are citizens of different states.

13.    This Court has subject matter jurisdiction over the claims made in this complaint under 28 U.S.C. § 1331, in that this complaint alleges numerous claims under ERISA, which is a Federal Statute.

14.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant conducts business in, and therefore resides in and is subject to personal jurisdiction in the Eastern District of Missouri.

## COUNT I – REQUEST BY GERALD SANOK AND CONTINENTAL

## RESEARCH CORPORATION FOR DECLARATORY JUDGMENT

## AGAINST DRUMMOND AMERICAN CORPORATION -- 28 U.S.C. § 2201

15.    Gerald Sanok and Continental restate and reallege the above paragraphs 1-14 as if fully set forth herein.

16.    Between 1982 and 2006, Gerald Sanok was an independent sales agent for Drummond.

17.    During his tenure with Drummond, Sanok sold Drummond products to state and federal governmental entities, schools, churches, institutions, municipalities and private companies in the State of New York.

18.    The products sold by Sanok on behalf of Drummond were common chemical products that are offered through many different distributors nationwide under private label. Upon information and belief, none of the products sold by Sanok on behalf of Drummond were unique to Drummond.

19.    During his twenty-four year sales agent relationship with Drummond, Sanok developed a substantial customer base for himself primarily through the use of cold calling and self generated referrals.

20.    None of Sanok's regular customers were pre-existing customers of Drummond, and similarly none of Sanok's regular customers were developed through the use of Drummond provided referrals.

21.    Upon information and belief, all of the customers developed by Sanok during his affiliation with Drummond lacked any sort of product loyalty, brand loyalty, or company loyalty, for the products that they customarily purchased from Sanok.

22.    Upon information and belief, all of the customers developed by Sanok during his affiliation with Drummond also purchased products from competitors of Drummond.

23.    Sanok was terminated from Drummond without cause on or about June 27, 2006.

24.    In July 2006, Gerald Sanok entered into a sales agent relationship with Continental, whereby Sanok agreed to sell Continental products in the State of New York and surrounding territories, in exchange for commission-based compensation from Continental.

25.    Sanok's sales territory on behalf of Continental is similar to the sales territory in which he sold Drummond products.

26.    Some of the products offered by Continental are similar or identical to products offered by Drummond, albeit labeled differently.

27.    In an effort to sell Continental Products in the State of New York, Sanok will presumably encounter and solicit many of the same customers to which he sold products on behalf of Drummond.

28.    After Sanok became a sales agent for Continental, Drummond sent a letter to Sanok, with a copy to Continental (hereinafter the "July 27th, 2006 Letter to Sanok"), reminding each of them of Sanok's alleged non-competition obligations under Drummond's 'Agreement with Independent Sale Agent' (hereinafter the "Sanok Non-Compete Agreement").  A copy of the July 27th, 2006 Letter to Sanok is attached hereto as Exhibit "A" and incorporated herein by reference thereto.  A copy of the Sanok Non-Compete Agreement is attached hereto as Exhibit "B" and incorporated herein by reference thereto.

29.    After Continental received its copy of the July 27th, 2006 Letter to Sanok, Drummond (by and through legal counsel) made it clear to Continental and Sanok's attorneys in subsequent telephone conversations and correspondence that Drummond intended to hold

Continental and Sanok legally responsible for any failure of Sanok to abide by the terms of the Sanok Non-Compete Agreement.

30.    Drummond (by and through legal counsel) indicated that the solicitation by Sanok of customers encountered during Sanok's affiliation with Drummond would be deemed a breach of the Sanok Non-Compete Agreement, and that Continental could be held liable for "tortious interference with contract". Drummond further made it clear that Drummond intended to strictly enforce the non-competition provisions of the Sanok Non-Compete Agreement, whether by injunction or otherwise.

31.    Despite Drummond's threats of legal action, Continental and Sanok insist that the non-competition provisions of the Sanok Non-Compete Agreement are unenforceable on grounds that such non-competition provisions are not necessary to support any legitimate business interest of Drummond, and on grounds that Sanok was terminated by Drummond without cause.

32.    The non-competition provisions of the Sanok Non-Compete Agreement (hereinafter the Non-Competition Provisions") appear in Section 3, Subsections (a), (b), and (d), and read as follows:

> (a)  During the term of his Agency and for a period of Two (2) Years following termination thereof whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, he shall not, directly or indirectly, for or on behalf of himself or any company or firm in which he has an interest or in which any member of his family has an interest, solicit orders from customers or sell products competitive to those sold by COMPANY to any customer that he

soliticed or sold on behalf of COMPANY during the last 12 months of his relationship with COMPANY.

(b) AGENT shall not, at any time, or in any place, territory or location, disclose to any person, firm, association or corporation other than COMPANY, the names of or any other information concerning any of the customers that he solicited or sold during his relationship with COMPANY or the names of which were furnished to him by COMPANY for such purpose.

(d) During the term hereof, and at all times thereafter, AGENT shall not disclose to any person, firm or corporation other than COMPANY any trade information, techniques or other confidential information of the business of COMPANY, its methods of doing business or any information concerning its customers learned or acquired by AGENT during his relationship with COMPANY and shall not engage in any unfair trade practices with respect to COMPANY.

33.    By its terms, The Sanok Non-Compete Agreement is to be "construed, interpreted and performed in accordance with the laws of the State of Illinois." *See*, Section 6 of the Sanok Non-Compete Agreement.

34.    The Non-Competition Provisions of the Sanok Non-Compete Agreement (as set forth above) are unenforceable because such provisions are not necessary to support any legitimate business interest of Drummond.

35.    Under Illinois law, in order to have a valid covenant not to compete, an employer must demonstrate that the covenant is (1) ancillary to either a valid employment contract or

relationship, (2) it is supported by consideration, (3) it is reasonable in geographic and temporal scope, and (4) it is necessary to support a legitimate business interest of the employer. *Abel v. Fox* 654 NE2d 591 (Ill. App. 4th Dis. 1995).

36.    Here (without conceding the existence of the first three prongs), Drummond cannot prove the fourth prong of the validity test with regard to the Sanok Non-Compete Agreement, because Drummond does not possesses a legitimate business interest in the enforcement of the Non-Competition Provisions contained within the Sanok Non-Compete Agreement.

37.    Illinois recognizes two general situations where a legitimate business interest may be found for purposes of enforcing a covenant not to compete: 1) Where by the nature of the business, the employer has a near-permanent relationship with its customers and but for an individuals' employment, [the former employee] would not have had contact with the customers, or 2) where the former employee learned trade secrets or acquired other confidential information and subsequently tried to use it for his own benefit. *Label Printers v. Pflug* 564 NE 2d 1382, 1387 (Ill. App. 2nd Dist 1989).

38.    Because Drummond lacks any sort of near-permanent relationship with its customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Sanok Non-Compete Agreement.

39.    The Illinois Courts have held that a "near-permanent relationship" is generally absent from sales related businesses. *Springfield Rare Coin Galleries v. Mileham* 620 NE 2d 479, 488 (Ill. App. Ct 4th Dist. 1993).  In addition, the Illinois Courts have held that a near permanent relationship is generally absent in a business which does not engender customer loyalty by providing a unique product, or where customers of the business utilize several

suppliers simultaneously to meet their needs.  *Id.* Where a customer's identity can be determined by reference to telephone or specialized directories, the near permanency test will also not be satisfied.  *See, e.g., Image Supplies, Inc. v. Hilmert*, 71 Ill. App. 3d 710, 714-715 (Ill. App. 1979).

40.    Here, Drummond is engaged in a highly competitive industry selling common chemical and industrial cleaning products that are readily available from other suppliers such as Continental.  Within the industry, there is no secret that the target customers for purchasing chemicals and industrial cleaning products include state and federal governmental entities, schools, churches, municipalities, institutions, private companies, etc.  Such customers are easily ascertainable by opening the telephone book in any locale.  As a result, Drummond cannot demonstrate that it possesses any sort of near permanent relationship with its customers.

41.    Drummond similarly cannot demonstrate that Sanok learned "trade secrets" or acquired "other confidential information" through his affiliation with Drummond, or that he subsequently tried to use such information for his own benefit.    This is partially due to the fact that customer identities do not amount to "trade secret" or "other confidential information" under Illinois Law.  Illinois law defines "trade secret" as "information that is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use, and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."  765 Ill. Comp. Stat. Ann 1065/2.

42.    Customer lists or customer information can constitute a trade secret only where the lists or information have been developed by the employer over a number of years at great expense and kept under tight security.  *Label Printers*, at 1389.  To be protectable the

information must have been treated by the employer as confidential and secret, not generally available to other employees, not known by those in the trade, and not easily duplicated by reference to telephone directories or industry publications. *Id.* Furthermore, customers must not have done business with more than one company or otherwise changed businesses so frequently that they were known to an employer's competitors. *Id.*

43.     Here, the identity of customers developed by Sanok during his affiliation with Drummond cannot amount to a "trade secret" or "other confidential information" because Drummond did not keep such customers' identities under tight security; because Drummond did not incur any great expense in helping Sanok develop his customers;  because the customer identities are easily ascertainable by reference to telephone directories and industry publications; and because, upon information and belief, customers encountered by Sanok during his affiliation with Drummond conducted business with more than one company or otherwise changed businesses so frequently that they were already known to Drummond's competitors.

44.     Because Drummond lacks any sort of near-permanent relationship with customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Non-Competition Provisions of the Sanok Non-Compete Agreement.

45.     Because Drummond lacks a legitimate business interest in the enforcement of the Non-Competition Provisions of the Sanok Non-Compete Agreement, those provisions are unenforceable under Illinois law.

46.     Notwithstanding Drummond's lack of legitimate business interest in the enforcement of the Non-Competition Provisions of the Sanok Non-Compete Agreement, the fact

11

that Sanok was terminated from Drummond without cause provides an additional basis for this court to decree that the Non-Competition Provisions of the Sanok Non-Compete Agreement are unenforceable.

47.    The law in Illinois is not settled regarding the enforceability of non-compete clauses where an individual is terminated without cause.  However, logic dictates that a restrictive covenant that becomes effective when an employee is terminated without cause is not reasonably necessary to protect an employer's good will.  This is because a company's goodwill can be protected by not dismissing a good employee.  Thus, the imposition of a restrictive covenant following such a dismissal serves only the purpose of preventing competition – an insufficient justification for enforceability.  *See Rao v. Rao,* 718 F.2d 219, 224 (7th Cir. 1983).

48.    Because Drummond failed to provide any valid basis for terminating Sanok after twenty-four years, this court should follow the principle noted in *Rao*, *supra*, thus finding that the Non-Competition Provisions of the Sanok Non-Compete Agreement are unenforceable on grounds that Sanok was not terminated for cause.

49.    Sanok and Continental are entitled to a declaratory judgment decreeing that the Non-Competition Provisions of the Sanok Non-Compete Agreement are unenforceable, and decreeing that neither Sanok nor Continental owe any legal duty to Drummond to refrain from selling Continental products to customers that Sanok encountered during his affiliation with Drummond.

WHEREFORE, Sanok and Continental pray this Court for a declaratory judgment decreeing that the Non-Competition Provisions of the Sanok Non-Compete Agreement are unenforceable, and decreeing that neither Sanok nor Continental owe any legal duty to Drummond to refrain from selling Continental products to customers that Sanok encountered

during his affiliation with Drummond, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT II – PLAINTIFF GERALD SANOK'S  CLAIM FOR BREACH OF THE NEW YORK SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- N.Y. LAB. LAW, ARTICLE 6, § 191-A *et seq.*

50.    Gerald Sanok restates and realleges the above paragraphs 1-49 as if fully set forth herein.

51.    Drummond is an Illinois Corporation engaged in the business of manufacturing.

52.    Drummond manufactures, produces, imports, and/or distributes products for wholesale.

53.    Gerald Sanok is an individual resident of the State of New York.

54.    Gerald Sanok was retained by Drummond as an independent contractor to solicit orders for Drummond's Products in the State of New York.

55.    Drummond regularly contracts with sales representatives to solicit orders for its products.

56.    Drummond pays its sales representatives based upon rates which are expressed as a percentage of the dollar amount of wholesale orders or sales.

57.    Gerald Sanok is a sales representative within the meaning of Section 191-a(d) of the New York Labor Laws.

58.    Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in Section 191-a(a) of the New York Labor Laws.

59.    Drummond is a "Principal", within the meaning of Section 191-a(c) of the New York Labor Laws.

60.    In 1985, Sanok and Drummond entered into an agreement entitled Independent Sales Agent's Security Bonus Program (hereinafter the "Bonus Agreement").  A true and accurate copy of the Bonus Agreement is attached hereto as Exhibit "C" and incorporated herein by reference thereto.

61.    In exchange for Sanok's continued sales efforts on behalf of Drummond, pursuant to the terms of the Bonus Agreement Drummond agreed to set aside and pay Sanok an additional four percent (4%) of Sanok's net commissions earned each year.

62.    The Bonus Agreement governed the payment of commissions earned by Gerald Sanok, and therefore falls within the purview of Sections 191-a, 191-b, and 191-c of the New York Labor Laws.

63.    The Bonus Agreement states that payment of amounts credited to an Agent's bonus account shall be "payable to Agent or his or her designated beneficiary following termination of the agency relationship . . ."

64.    Following Sanok's termination from Drummond, the vested balance (hereinafter the "Vested Balance") in Sanok's account totaled Eighty-Nine Thousand Sixty-Seven Dollars and Eighty-One Cents ($89,067.81).  A statement of Sanok's Vested Balance under the Bonus Agreement is attached hereto as Exhibit "D", and incorporated herein by reference thereto.

65.    The Vested Balance is an earned commission within the meaning of Sections 191-a(b) of the New York Labor Laws.

66.    Upon information and belief, all of the amounts depicted on Exhibit D represent Commissions attributable to merchandise which has actually been delivered to, accepted by, and paid for by the customer.

67.    To date, Drummond has failed and refused to remit the Vested Balance to Gerald Sanok.

68.    As a result of Drummond's failure to remit payment of Sanok's Vested Balance, in accordance with Section 191-c of the New York Labor Laws Drummond is liable to Sanok for double damages, as well as reasonable attorney's fees, court costs, and disbursements.

WHEREFORE, Plaintiff Gerald Sanok respectfully prays this Court enter judgment in favor of Gerald Sanok and against Drummond American Corporation in the amount of One Hundred Seventy-Eight Thousand One Hundred Thirty-Five Dollars and Sixty-Two Cents ($178,135.62), together with an award of Gerald Sanok's reasonable attorneys' fees, court costs, and disbursements, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT III – PLAINTIFF GERALD SANOK'S CLAIM FOR BREACH OF THE ILLINOIS SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 820 ILCS 120

69.    Gerald Sanok restates and realleges the above paragraphs 1-68 as if fully set forth herein.

70.    Drummond is an Illinois Corporation that manufactures, produces, imports, and/or distributes products for sale.

71.    Drummond contracts with sales representatives to solicit orders for its products.

72.    Drummond compensates its sales representatives at rates which are expressed as a percentage of the dollar amount of profits.

73.    Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in 820 ILCS 120/1(1).

74.    Drummond is a "Principal", within the meaning of 820 ILCS 120/1(3).

75.    Gerald Sanok contracted with Drummond as an independent contractor to solicit orders for Drummond's products in exchange for commission based compensation.

76.    Gerald Sanok is a sales representative within the meaning of 820 ILCS 120/1(4).

77.    The Bonus Agreement governs the payment of commissions earned by Gerald Sanok, and therefore falls within the scope of the Illinois Sales Representative Act, 820 ILCS 120, *et seq.*

78.    Sanok's Vested Balance depicted in Exhibit D is a commission which has become "due and payable" within the meaning of 820 ILCS 120, *et seq.*

79.    To date, Drummond has failed and refused to remit the Vested Balance to Gerald Sanok.

80.    As a result of Drummond's failure to remit payment of Sanok's Vested Balance, in accordance with 820 ILCS 120/3 Drummond is liable to Sanok for exemplary damages of up to three times the amount of the Bonus Commissions owed to Sanok, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff Gerald Sanok respectfully prays this Court enter judgment in favor of Gerald Sanok and against Drummond American Corporation in the amount of Eighty-Nine Thousand Sixty-Seven Dollars and Eighty-One Cents ($89,067.81), together with exemplary damages in the amount of Two Hundred Sixty-Seven Thousand Two Hundred Three Dollars and Forty-Three Cents ($267,203.43), together with an award of Gerald Sanok's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT IV – PLAINTIFF GERALD SANOK'S  CLAIM FOR RECOVERY OF BENEFITS UNDER  THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 20 U.S.C. § 1001, *et seq.*

81.    Gerald Sanok restates and realleges the above paragraphs 1-80 as if fully set forth herein.

82.    Drummond is an "employer" within the meaning of 29 U.S.C. § 1002 (5).

83.    The Bonus Agreement is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002 (2)(A).

84.    The Bonus Agreement is an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. § 1002 (3).

85.    Gerald Sanok is a former "employee" of Drummond within the meaning of 29 U.S.C. § 1002 (6).

86.    Gerald Sanok is eligible to receive benefits under the Bonus Agreement, and Sanok is therefore a "participant" within the meaning of 29 U.S.C. § 1002 (7).

87.    The terms of the Bonus Agreement designate that Gerald Sanok is entitled to benefits thereunder, and as a result Gerald Sanok is a "beneficiary" within the meaning of 29 U.S.C. § 1002 (8).

88.    Following Sanok's termination from Drummond, Sanok became entitled to receive 100% of the Vested Balance under the Bonus Agreement.

89.    Drummond has failed and refused to remit the Vested Balance to Sanok.

90.    Sanok brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due from Drummond under the terms of the Bonus Agreement.

WHEREFORE, Plaintiff Gerald Sanok respectfully prays this Court enter judgment in favor of Gerald Sanok and against Drummond American Corporation in the amount of Eighty-Nine Thousand Sixty-Seven Dollars and Eighty-One Cents ($89,067.81), together with an award of Gerald Sanok's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT V – PLAINTIFF GERALD SANOK'S  CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION

91.    Gerald Sanok restates and realleges the above paragraphs 1-90 as if fully set forth herein.

92.    Drummond has materially breached the Bonus Agreement by failing and refusing to remit payment of Sanok's Vested Balance.

93.    As a result of Drummond's breach of the Bonus Agreement, Sanok has been damaged in the amount of Eighty-Nine Thousand Sixty-Seven Dollars and Eighty-One Cents ($89,067.81).

WHEREFORE, Plaintiff Gerald Sanok respectfully prays this Court enter judgment in favor of Gerald Sanok and against Drummond American Corporation in the amount of Eighty-Nine Thousand Sixty-Seven Dollars and Eighty-One Cents ($89,067.81), together with an award of Gerald Sanok's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

**COUNT VI – REQUEST BY RICHARD STEELE AND CONTINENTAL**

**RESEARCH CORPORATION FOR DECLARATORY JUDGMENT**

**AGAINST DRUMMOND AMERICAN CORPORATION -- 28 U.S.C. § 2201**

94.    Richard Steele and Continental restate and reallege the above paragraphs 1-14 as if fully set forth herein.

95.    Between 1982 and 2006, Richard Steele was an independent sales agent for Drummond.

96.    During his tenure with Drummond, Steele sold Drummond products to state and federal governmental entities, schools, churches, institutions, municipalities and private companies in the State of Indiana.

97.    The products sold by Steele on behalf of Drummond were common chemical products that are offered through many different distributors nationwide under private label. Upon information and belief, none of the products sold by Steele on behalf of Drummond were unique to Drummond.

98.    During his twenty-four year sales agent relationship with Drummond, Steele developed a substantial customer base for himself primarily through the use of cold calling and self generated referrals.

99.    None of Steele's regular customers were pre-existing customers of Drummond, and similarly none of Steele's regular customers were developed through the use of Drummond provided referrals.

100.  Upon information and belief, all of the customers developed by Steele during his affiliation with Drummond lacked any sort of product loyalty, brand loyalty, or company loyalty, for the products that they customarily purchased from Steele.

101.  Upon information and belief, all of the customers developed by Steele during his affiliation with Drummond also purchased products from competitors of Drummond.

102.  Steele was terminated from Drummond without cause on or about June 12, 2006.

103.  Richard Steele subsequently entered into a sales agent relationship with Continental, whereby Steele agreed to sell Continental products in the State of Indiana and surrounding territories, in exchange for commission-based compensation from Continental.

104.  Steele's sales territory on behalf of Continental is similar to the sales territory in which he sold Drummond products.

105.  Some of the products offered by Continental are similar or identical to products offered by Drummond, albeit labeled differently.

106.  In an effort to sell Continental Products in the State of Indiana, Steele will presumably encounter and solicit many of the same customers to which he sold products on behalf of Drummond.

107.  After Steele became a sales agent for Continental, Drummond sent a cease and desist letter to Steele, with a copy to Continental (hereinafter the "July 27th, 2006 Letter to Steele"), reminding each of them of Steele's alleged non-competition obligations under Drummond's 'Agreement with Independent Sale Agent' (hereinafter the "Steele Non-Compete Agreement").  A copy of the July 27th, 2006 Letter to Steele is attached hereto as Exhibit "E" and incorporated herein by reference thereto.  A copy of the Steele Non-Compete Agreement is attached hereto as Exhibit "F" and incorporated herein by reference thereto.

108.  After Continental received its copy of the July 27th, 2006 Letter to Steele, Drummond (by and through legal counsel) made it clear to Continental and Steele's attorneys in subsequent telephone conversations and correspondence that Drummond intended to hold

Continental and Steele legally responsible for any failure of Steele to abide by the terms of the Steele Non-Compete Agreement.

109.  Drummond (by and through legal counsel) indicated that the solicitation by Steele of customers encountered during Steele's affiliation with Drummond would be deemed a breach of the Steele Non-Compete Agreement, and that Continental would be held liable for "tortious interference with contract".  Drummond further made it clear that Drummond intended to strictly enforce the non-competition provisions of the Steele Non-Compete Agreement, whether by injunction or otherwise.

110.  Despite Drummond's threats of legal action, Continental and Steele insist that the non-competition provisions of the Steele Non-Compete Agreement are unenforceable on grounds that such non-competition provisions are not necessary to support any legitimate business interest of Drummond, and on grounds that Steele was terminated by Drummond without cause.

111.  The non-competition provisions of the Steele Non-Compete Agreement (hereinafter the Non-Competition Provisions") appear in Section 3, Subsections (a), (b), and (d), and read as follows:

>   (a)  During the term of his Agency and for a period of Two (2) Years following termination thereof whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, he shall not, directly or indirectly, for or on behalf of himself or any company or firm in which he has an interest or in which any member of his family has an interest, solicit orders from customers or sell products competitive to those sold by

COMPANY to any customer that he solicited or sold on behalf of COMPANY during the last 12 months of his relationship with COMPANY.

(b) AGENT shall not, at any time, or in any place, territory or location, disclose to any person, firm, association or corporation other than COMPANY, the names of or any other information concerning any of the customers that he solicited or sold during his relationship with COMPANY or the names of which were furnished to him by COMPANY for such purpose.

(d) During the term hereof, and at all times thereafter, AGENT shall not disclose to any person, firm or corporation other than COMPANY any trade information, techniques or other confidential information of the business of COMPANY, its methods of doing business or any information concerning its customers learned or acquired by AGENT during his relationship with COMPANY and shall not engage in any unfair trade practices with respect to COMPANY.

112.  By its terms, The Steele Non-Compete Agreement is to be "construed, interpreted and performed in accordance with the laws of the State of Illinois." *See*, Section 6 of the Steele Non-Compete Agreement.

113.  The Non-Competition Provisions of the Steele Non-Compete Agreement (as set forth above) are unenforceable because such provisions are not necessary to support any legitimate business interest of Drummond.

114.   Under Illinois law, in order to have a valid covenant not to compete, an employer must demonstrate that the covenant is (1) ancillary to either a valid employment contract or relationship, (2) it is supported by consideration, (3) it is reasonable in geographic and temporal scope, and (4) it is necessary to support a legitimate business interest of the employer.  *Abel v. Fox* 654 NE2d 591 (Ill. App. 4th Dis. 1995).

115.   Here (without conceding the existence of the first three prongs), Drummond cannot prove the fourth prong of the validity test with regard to the Steele Non-Compete Agreement, because Drummond does not possesses a legitimate business interest in the enforcement of the Non-Competition Provisions contained within the Steele Non-Compete Agreement.

116.    Illinois recognizes two general situations where a legitimate business interest may be found for purposes of enforcing a covenant not to compete: 1) Where by the nature of the business, the employer has a near-permanent relationship with its customers and but for an individuals' employment, [the former employee] would not have had contact with the customers, or 2) where the former employee learned trade secrets or acquired other confidential information and subsequently tried to use it for his own benefit.  *Label Printers v. Pflug* 564 NE 2d 1382, 1387 (Ill. App. 2nd Dist 1989).

117.   Because Drummond lacks any sort of near-permanent relationship with its customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Steele Non-Compete Agreement.

118.   The Illinois Courts have held that a "near-permanent relationship" is generally absent from sales related businesses. *Springfield Rare Coin Galleries v. Mileham* 620 NE 2d 479, 488 (Ill. App. Ct 4th Dist. 1993).  In addition, the Illinois Courts have held that a near

permanent relationship is generally absent in a business which does not engender customer

loyalty by providing a unique product, or where customers of the business utilize several

suppliers simultaneously to meet their needs. *Id.* Where a customer's identity can be determined

by reference to telephone or specialized directories, the near permanency test will also not be

satisfied. *See, e.g., Image Supplies, Inc. v. Hilmert*, 71 Ill. App. 3d 710, 714-715 (Ill. App.

1979).

119.  Here, Drummond is engaged in a highly competitive industry selling common

chemical and industrial cleaning products that are readily available from other suppliers such as

Continental.  Within the industry, there is no secret that the target customers for purchasing

chemicals and industrial cleaning products include state and federal governmental entities,

schools, churches, municipalities, institutions, private companies, etc.  Such customers are easily

ascertainable by opening the telephone book in any locale.  As a result, Drummond cannot

demonstrate that it possesses any sort of near permanent relationship with its customers.

120.  Drummond similarly cannot demonstrate that Steele learned "trade secrets" or

acquired "other confidential information" through his affiliation with Drummond, or that he

subsequently tried to use such information for his own benefit.   This is partially due to the fact

that customer identities do not amount to "trade secret" or "other confidential information" under

Illinois Law.  Illinois law defines "trade secret" as "information that is sufficiently secret to

derive economic value from not being generally known to other persons who can obtain

economic value from its disclosure or use, and which is the subject of efforts that are reasonable

under the circumstances to maintain its secrecy or confidentiality."  765 Ill. Comp. Stat. Ann

1065/2.

121.  Customer lists or customer information can constitute a trade secret only where the lists or information have been developed by the employer over a number of years at great expense and kept under tight security.  *Label Printers*, at 1389.  To be protectable the information must have been treated by the employer as confidential and secret, not generally available to other employees, not known by those in the trade, and not easily duplicated by reference to telephone directories or industry publications.  *Id.*  Furthermore, customers must not have done business with more than one company or otherwise changed businesses so frequently that they were known to an employer's competitors.  *Id.*

122.  Here, the identity of customers developed by Steele during his affiliation with Drummond cannot amount to a "trade secret" or "other confidential information" because Drummond did not keep such customers' identities under tight security; because Drummond did not incur any great expense in helping Steele develop his customers;  because the customer identities are easily ascertainable by reference to telephone directories and industry publications; and because, upon information and belief, customers encountered by Steele during his affiliation with Drummond conducted business with more than one company or otherwise changed businesses so frequently that they were already known to Drummond's competitors.

123.  Because Drummond lacks any sort of near-permanent relationship with customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Non-Competition Provisions of the Steele Non-Compete Agreement.

124.  Because Drummond lacks a legitimate business interest in the enforcement of the Non-Competition Provisions of the Steele Non-Compete Agreement, those provisions are unenforceable under Illinois law.

125.  Notwithstanding Drummond's lack of legitimate business interest in the enforcement of the Non-Competition Provisions of the Steele Non-Compete Agreement, the fact that Steele was terminated from Drummond without cause provides an additional basis for this court to decree that the Non-Competition Provisions of the Steele Non-Compete Agreement are unenforceable.

126.  The law in Illinois is not settled regarding the enforceability of non-compete clauses where an individual is terminated without cause.  However, logic dictates that a restrictive covenant that becomes effective when an employee is terminated without cause is not reasonably necessary to protect an employer's good will.  This is because a company's goodwill can be protected by not dismissing a good employee.  Thus, the imposition of a restrictive covenant following such a dismissal serves only the purpose of preventing competition – an insufficient justification for enforceability.  *See Rao v. Rao,* 718 F.2d 219, 224 (7th Cir. 1983).

127.  Because Drummond failed to provide any valid basis for terminating Steele after twenty-four years, this court should follow the principle noted in *Rao*, *supra*, thus finding that the Non-Competition Provisions of the Steele Non-Compete Agreement are unenforceable on grounds that Steele was not terminated for cause.

128.   Steele and Continental are entitled to a declaratory judgment decreeing that the Non-Competition Provisions of the Steele Non-Compete Agreement are unenforceable, and decreeing that neither Steele nor Continental owe any legal duty to Drummond to refrain from

selling Continental products to customers that Steele encountered during his affiliation with Drummond.

WHEREFORE, Steele and Continental pray this Court for a declaratory judgment decreeing that the Non-Competition Provisions of the Steele Non-Compete Agreement are unenforceable, and decreeing that neither Steele nor Continental owe any legal duty to Drummond to refrain from selling Continental products to customers that Steele encountered during his affiliation with Drummond, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT VII – PLAINTIFF RICHARD STEELE'S CLAIM FOR BREACH OF THE INDIANA SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- IND. CODE § 24-4-7 *et seq.*

129.  Richard Steele restates and realleges the above paragraphs 1-14 and 94-128 as if fully set forth herein.

130.  Drummond is an Illinois Corporation engaged in the business of manufacturing, producing, importing, selling and/or distributing products for wholesale.

131.  Richard Steele is an individual resident of the State of Indiana.

132.  Richard Steele contracted with Drummond to solicit wholesale orders for Drummond's Products in the State of Indiana, in exchange for commission based compensation.

133.  Drummond regularly contracts with sales representatives to solicit wholesale orders for its products.

134.  Drummond pays its sales representatives based upon rates which are expressed as a percentage of the dollar amount of orders taken or sales made by the sales representative.

135.  Richard Steele is a sales representative within the meaning of Section 24-4-7-4 of the Indiana Code.

136.  Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in Section 24-4-7-1 of the Indiana Code.

137.  Drummond is a "Principal", within the meaning of Section 24-4-7-3 of the Indiana Code.

138.  In 1990, Steele and Drummond entered into an agreement entitled Independent Sales Agent's Security Bonus Program (hereinafter the "Bonus Agreement").  Upon information and belief, a true and accurate copy of the Bonus Agreement is attached hereto as Exhibit "G" and incorporated herein by reference thereto.

139.  In exchange for Steele's continued sales efforts on behalf of Drummond, pursuant to the terms of the Bonus Agreement Drummond agreed to set aside and pay Steele an additional four percent (4%) of Steele's net commissions earned each year.

140.  The Bonus Agreement governed the payment of commissions earned by Richard Steele, and therefore falls within the purview of Section 24-4-7-1 of the Indiana Code.

141.  The Bonus Agreement states that payment of amounts credited to an Agent's bonus account shall be "payable to Agent or his or her designated beneficiary following termination of the agency relationship . . ."

142.  Following Steele's termination from Drummond, the vested balance (hereinafter the "Vested Balance") in Steele's account totaled Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43).  A statement of Steele's Vested Balance under the Bonus Agreement is attached hereto as Exhibit "H", and incorporated herein by reference thereto.

143.  The Vested Balance is an accrued commission within the meaning of Section 24-4-7-5 of the Indiana Code.

144.  To date, Drummond has failed and refused to remit the Vested Balance to Richard Steele.

145.  As a result of Drummond's failure to remit payment of Steele's Vested Balance, in accordance with Section 24-4-7-5 of the Indiana Code Drummond is liable to Steele for exemplary damages of up to three times the amount of the Bonus Commissions owed to Steele, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff Richard Steele respectfully prays this Court enter judgment in favor of Richard Steele and against Drummond American Corporation in the amount of Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43), together with exemplary damages in the amount of One Hundred Four Thousand Seven Hundred Ninety-One Dollars and Twenty-Nine Cents ($104,791.29), together with an award of Richard Steele's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT VIII – PLAINTIFF RICHARD STEELE'S  CLAIM FOR BREACH OF THE ILLINOIS SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 820 ILCS 120

146.  Richard Steele restates and realleges the above paragraphs 1-14 and 94-145 as if fully set forth herein.

147.  Drummond is an Illinois Corporation that manufactures, produces, imports, and/or distributes products for sale.

148.  Drummond contracts with sales representatives to solicit orders for its products.

149.  Drummond compensates its sales representatives at rates which are expressed as a percentage of the dollar amount of profits.

150.  Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in 820 ILCS 120/1(1).

151.  Drummond is a "Principal", within the meaning of 820 ILCS 120/1(3).

152.  Richard Steele contracted with Drummond as an independent contractor to solicit orders for Drummond's products in exchange for commission based compensation.

153.  Richard Steele is a sales representative within the meaning of 820 ILCS 120/1(4).

154.  The Bonus Agreement governs the payment of commissions earned by Richard Steele, and therefore falls within the scope of the Illinois Sales Representative Act, 820 ILCS 120, *et seq.*

155.  Steele's Vested Balance depicted in Exhibit H is a commission which has become "due and payable" within the meaning of 820 ILCS 120, *et seq.*

156.  To date, Drummond has failed and refused to remit the Vested Balance to Richard Steele.

157.  As a result of Drummond's failure to remit payment of Steele's Vested Balance, in accordance with 820 ILCS 120/3 Drummond is liable to Steele for exemplary damages of up to three times the amount of the Bonus Commissions owed to Steele, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff Richard Steele respectfully prays this Court enter judgment in favor of Richard Steele and against Drummond American Corporation in the amount of Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43), together with exemplary damages in the amount of One Hundred Four Thousand Seven Hundred Ninety-One

Dollars and Twenty-Nine Cents ($104,791.29), together with an award of Richard Steele's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT IX – PLAINTIFF RICHARD STEELE'S  CLAIM FOR RECOVERY OF BENEFITS UNDER  THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 20 U.S.C. § 1001, *et seq.*

158.  Richard Steele restates and realleges the above paragraphs 1-14 and 94-157 as if fully set forth herein.

159.  Drummond is an "employer" within the meaning of 29 U.S.C. § 1002 (5).

160.  The Bonus Agreement is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002 (2)(A).

161.  The Bonus Agreement is an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. § 1002 (3).

162.  Richard Steele is a former "employee" of Drummond within the meaning of 29 U.S.C. § 1002 (6).

163.  Richard Steele is eligible to receive benefits under the Bonus Agreement, and Steele is therefore a "participant" within the meaning of 29 U.S.C. § 1002 (7).

164.  The terms of the Bonus Agreement designate that Richard Steele is entitled to benefits thereunder, and as a result Richard Steele is a "beneficiary" within the meaning of 29 U.S.C. § 1002 (8).

165.  Following Steele's termination from Drummond, Steele became entitled to receive 100% of the Vested Balance under the Bonus Agreement.

166.  Drummond has failed and refused to remit the Vested Balance to Steele.

167.  Steele brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due from Drummond under the terms of the Bonus Agreement.

WHEREFORE, Plaintiff Richard Steele respectfully prays this Court enter judgment in favor of Richard Steele and against Drummond American Corporation in the amount of Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43), together with an award of Richard Steele's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT X – PLAINTIFF RICHARD STEELE'S  CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION

168.  Richard Steele restates and realleges the above paragraphs 1-14 and 94-167 as if fully set forth herein.

169.  Drummond has materially breached the Bonus Agreement by failing and refusing to remit payment of Steele's Vested Balance.

170.  As a result of Drummond's breach of the Bonus Agreement, Steele has been damaged in the amount of Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43).

WHEREFORE, Plaintiff Richard Steele respectfully prays this Court enter judgment in favor of Richard Steele and against Drummond American Corporation in the amount of Thirty-Four Thousand Nine Hundred Thirty Dollars and Forty-Three Cents ($34,930.43), together with an award of Richard Steele's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## <u>COUNT XI – REQUEST BY KURT WISE AND CONTINENTAL</u>

## <u>RESEARCH CORPORATION FOR DECLARATORY JUDGMENT</u>

## <u>AGAINST DRUMMOND AMERICAN CORPORATION -- 28 U.S.C. § 2201</u>

171.  Kurt Wise and Continental restate and reallege the above paragraphs 1-14 as if fully set forth herein.

172.  Between 1998 and 2006, Kurt Wise was an independent sales agent for Drummond.

173.  During his tenure with Drummond, Wise sold Drummond products to state and federal governmental entities, schools, churches, institutions, municipalities and private companies in the State of Wisconsin.

174.  The products sold by Wise on behalf of Drummond were common chemical products that are offered through many different distributors nationwide under private label. Upon information and belief, none of the products sold by Wise on behalf of Drummond were unique to Drummond.

175.  During his sales agent relationship with Drummond, Wise developed a substantial customer base for himself primarily through the use of cold calling and self generated referrals.

176.  None of Wise's regular customers were pre-existing customers of Drummond, and similarly none of Wise's regular customers were developed through the use of Drummond provided referrals.

177.  Upon information and belief, all of the customers developed by Wise during his affiliation with Drummond lacked any sort of product loyalty, brand loyalty, or company loyalty, for the products that they customarily purchased from Wise.

178.  Upon information and belief, all of the customers developed by Wise during his affiliation with Drummond also purchased products from competitors of Drummond.

179.  Kurt Wise resigned from Drummond in 2006.

180.  After resigning from Drummond, Kurt Wise entered into a sales agent relationship with Continental, whereby Wise agreed to sell Continental products in the State of Wisconsin and surrounding territories, in exchange for commission-based compensation from Continental.

181.  Wise's sales territory on behalf of Continental is similar to the sales territory in which he sold Drummond products.

182.  Some of the products offered by Continental are similar or identical to products offered by Drummond, albeit labeled differently.

183.  In an effort to sell Continental Products in the State of Wisconsin, Wise will presumably encounter and solicit many of the same customers to which he sold products on behalf of Drummond.

184.  After learning of the sales agent relationship between Continental and Wise, Drummond (by and through legal counsel) made it clear to Continental and Wise's attorneys in telephone conversations and correspondence that Drummond intended to hold Continental and Wise legally responsible for any failure of Wise to abide by the terms of an alleged Non-Compete Agreement (hereinafter the "Wise Non-Compete Agreement").

185.  Drummond (by and through legal counsel) indicated that the solicitation by Wise of customers encountered during Wise's affiliation with Drummond would be deemed a breach of the Wise Non-Compete Agreement, and that Continental would be held liable for "tortious interference with contract".  Drummond further made it clear that Drummond intended to strictly enforce the non-competition provisions of the Wise Non-Compete Agreement, whether by injunction or otherwise.

186.  Despite Drummond's threats of legal action, Continental and Wise insist that the non-competition provisions of the Wise Non-Compete Agreement are unenforceable on grounds that such non-competition provisions are not necessary to support any legitimate business interest of Drummond.

187.  Upon information and belief, the non-competition provisions of the Wise Non-Compete Agreement (hereinafter the Non-Competition Provisions") appear in Section 3(d), Subsections (i), (ii), (iii), and (iv), and read as follows:

(i)  During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof, whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not, directly or indirectly, for or on behalf of himself or any person, firm or entity solicit orders from or sell to any customer whom or which he solicited or sold on behalf of COMPANY during the last 12 months of his relationship with COMPANY, any products competitive to those distributed by COMPANY. Products competitive to those distributed by COMPANY are those which are substantially similar to or serve substantially similar functions as those products listed in COMPANY'S Sales Kit, Catalogs and Manuals furnished to Agent from time to time.

(ii) During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof,

whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not disclose to any person, firm or entity other than COMPANY or otherwise make use of or, through failure to exercise due care and diligence, cause or permit the unauthorized use of the names, Customer Information, or any other information concerning any of the customers that he solicited or sold during his affiliation with Company, whether such names, Customer Information or other information were furnished to him by COMPANY or developed by him in the course of his affiliation with COMPANY.

(iii)   AGENT shall not, at any time or in any place, disclose to any person, firm or entity or permit any of the same to be copied or in any manner furnish or otherwise make use of the Confidential Information and Trade Secrets or any other materials, Merchandise or Advertising Matter furnished to or received by him from COMPANY or assembled or compiled by him in the course of his affiliation with COMPANY, except as is necessary and appropriate to the solicitation of orders for COMPANY.

(iv)   During the term of his independent sales agency hereunder and at all times thereafter, AGENT shall not disclose to any person, firm or entity other than COMPANY any

techniques of the business of COMPANY or its methods of

doing business learned or acquired by AGENT during his

affiliation with COMPANY, or any other Confidential

Information or Trade Secrets of Company.

188.  By its terms, The Wise Non-Compete Agreement is to be "construed, interpreted and performed in accordance with the laws of the State of Illinois." *See*, Section 6 of the Wise Non-Compete Agreement.

189.  The Non-Competition Provisions of the Wise Non-Compete Agreement (as set forth above) are unenforceable because such provisions are not necessary to support any legitimate business interest of Drummond.

190.  Under Illinois law, in order to have a valid covenant not to compete, an employer must demonstrate that the covenant is (1) ancillary to either a valid employment contract or relationship, (2) it is supported by consideration, (3) it is reasonable in geographic and temporal scope, and (4) it is necessary to support a legitimate business interest of the employer. *Abel v. Fox* 654 NE2d 591 (Ill. App. 4th Dis. 1995).

191.  Here (without conceding the existence of the first three prongs), Drummond cannot prove the fourth prong of the validity test with regard to the Wise Non-Compete Agreement, because Drummond does not possesses a legitimate business interest in the enforcement of the Non-Competition Provisions contained within the Wise Non-Compete Agreement.

192.   Illinois recognizes two general situations where a legitimate business interest may be found for purposes of enforcing a covenant not to compete: 1) Where by the nature of the business, the employer has a near-permanent relationship with its customers and but for an individuals' employment, [the former employee] would not have had contact with the customers,

or 2) where the former employee learned trade secrets or acquired other confidential information and subsequently tried to use it for his own benefit. *Label Printers v. Pflug* 564 NE 2d 1382, 1387 (Ill. App. 2nd Dist 1989).

193.  Because Drummond lacks any sort of near-permanent relationship with its customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Wise Non-Compete Agreement.

194.  The Illinois Courts have held that a "near-permanent relationship" is generally absent from sales related businesses. *Springfield Rare Coin Galleries v. Mileham* 620 NE 2d 479, 488 (Ill. App. Ct 4th Dist. 1993).  In addition, the Illinois Courts have held that a near permanent relationship is generally absent in a business which does not engender customer loyalty by providing a unique product, or where customers of the business utilize several suppliers simultaneously to meet their needs. *Id.* Where a customer's identity can be determined by reference to telephone or specialized directories, the near permanency test will also not be satisfied.  *See, e.g., Image Supplies, Inc. v. Hilmert*, 71 Ill. App. 3d 710, 714-715 (Ill. App. 1979).

195.  Here, Drummond is engaged in a highly competitive industry selling common chemical and industrial cleaning products that are readily available from other suppliers such as Continental.  Within the industry, there is no secret that the target customers for purchasing chemicals and industrial cleaning products include state and federal governmental entities, schools, churches, municipalities, institutions, private companies, etc.  Such customers are easily ascertainable by opening the telephone book in any locale.  As a result, Drummond cannot demonstrate that it possesses any sort of near permanent relationship with its customers.

196.  Drummond similarly cannot demonstrate that Wise learned "trade secrets" or acquired "other confidential information" through his affiliation with Drummond, or that he subsequently tried to use such information for his own benefit.    This is partially due to the fact that customer identities do not amount to "trade secret" or "other confidential information" under Illinois Law.  Illinois law defines "trade secret" as "information that is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use, and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."  765 Ill. Comp. Stat. Ann 1065/2.

197.  Customer lists or customer information can constitute a trade secret only where the lists or information have been developed by the employer over a number of years at great expense and kept under tight security.  *Label Printers*, at 1389.  To be protectable the information must have been treated by the employer as confidential and secret, not generally available to other employees, not known by those in the trade, and not easily duplicated by reference to telephone directories or industry publications.  *Id.*  Furthermore, customers must not have done business with more than one company or otherwise changed businesses so frequently that they were known to an employer's competitors.  *Id.*

198.  Here, the identity of customers developed by Wise during his affiliation with Drummond cannot amount to a "trade secret" or "other confidential information" because Drummond did not keep such customers' identities under tight security; because Drummond did not incur any great expense in helping Wise develop his customers;  because the customer identities are easily ascertainable by reference to telephone directories and industry publications; and because, upon information and belief, customers encountered by Wise during his affiliation

with Drummond conducted business with more than one company or otherwise changed

businesses so frequently that they were already known to Drummond's competitors.

199.  Because Drummond lacks any sort of near-permanent relationship with customers,

and because customer identities do not constitute "trade secrets" or "other confidential

information", it cannot be said under Illinois Law that Drummond possesses any sort of

legitimate business interest in the enforcement of the Non-Competition Provisions of the Wise

Non-Compete Agreement.

200.  Because Drummond lacks a legitimate business interest in the enforcement of the

Non-Competition Provisions of the Wise Non-Compete Agreement, those provisions are

unenforceable under Illinois law.

201.  Wise and Continental are entitled to a declaratory judgment decreeing that the Non-

Competition Provisions of the Wise Non-Compete Agreement are unenforceable, and decreeing

that neither Wise nor Continental owe any legal duty to Drummond to refrain from selling

Continental products to customers that Wise encountered during his affiliation with Drummond.

WHEREFORE, Wise and Continental pray this Court for a declaratory judgment

decreeing that the Non-Competition Provisions of the Wise Non-Compete Agreement are

unenforceable, and decreeing that neither Wise nor Continental owe any legal duty to

Drummond to refrain from selling Continental products to customers that Wise encountered

during his affiliation with Drummond, and for such other and further relief as the court deems

just and proper under the circumstances.

## COUNT XII – PLAINTIFF KURT WISE'S CLAIM FOR BREACH OF THE WISCONSIN SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- WIS. STAT. § 134.93 *ET SEQ.*

202.  Kurt Wise restates and realleges the above paragraphs 1-14 and 171-201 as if fully set forth herein.

203.  Drummond is an Illinois Corporation engaged in the business of manufacturing, producing, importing, selling and/or distributing products for wholesale.

204.  Kurt Wise is an individual resident of the State of Wisconsin.

205.  Kurt Wise contracted with Drummond as an independent sales representative to solicit wholesale orders for Drummond's Products in the State of Wisconsin.

206.  Drummond agreed to pay Wise based upon rates which are expressed as a percentage of the dollar amount of Wise's orders or sales.

207.  Kurt Wise is an independent sales representative within the meaning of Section 134.93 of the Wisconsin Statutes.

208.  Drummond agreed to pay Wise in whole or in part by "Commission", as that term is defined in Section 134.93(1)(a) of the Wisconsin Statutes.

209.  Drummond is a "Principal", within the meaning of Section 134.93(1)(c) of the Wisconsin Statutes.

210.  In 2001, Wise and Drummond entered into an agreement entitled Independent Sales Agent's Security Bonus Program (hereinafter the "Bonus Agreement").  A true and accurate copy of the Bonus Agreement is attached hereto as Exhibit "I" and incorporated herein by reference thereto.

211.  In exchange for Wise's continued sales efforts on behalf of Drummond, pursuant to the terms of the Bonus Agreement Drummond agreed to set aside and pay Wise an additional four percent (4%) of Steele's net commissions earned each year.

212.  The Bonus Agreement governed the payment of commissions earned by Kurt Wise, and therefore falls within the purview of Section 134.93(1)(a) of the Wisconsin Statutes.

213.  The Bonus Agreement states that payment of amounts credited to an Agent's bonus account shall be "payable to Agent or his or her designated beneficiary following termination of the agency relationship . . ."

214.  Following Wise's resignation from Drummond, the vested balance (hereinafter the "Vested Balance") in Wise's account totaled or exceeded One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63).  A statement of Wise's Vested Balance under the Bonus Agreement is attached hereto as Exhibit "J", and incorporated herein by reference thereto.

215.  The Vested Balance is a commission that has "become due" within the meaning of Section 134.93 of the Wisconsin Statutes.

216.  To date, Drummond has failed and refused to remit the Vested Balance to Kurt Wise.

217.  As a result of Drummond's failure to remit payment of Wise's Vested Balance, in accordance with Section 134.93(5) of the Wisconsin Statutes Drummond is liable to Wise for exemplary damages of up to two hundred percent (200%) of the amount of the Bonus Commissions owed to Wise, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff Kurt Wise respectfully prays this Court enter judgment in favor of Kurt Wise and against Drummond American Corporation in the amount of One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63), together with

exemplary damages in the amount of Three Thousand Three Hundred Forty-One Dollars and Twenty-Six Cents ($3,341.26), together with an award of Kurt Wise's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XIII – PLAINTIFF KURT WISE'S  CLAIM FOR BREACH OF THE ILLINOIS SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 820 ILCS 120

218.  Kurt Wise restates and realleges the above paragraphs 1-14 and 171-217 as if fully set forth herein.

219.  Drummond is an Illinois Corporation that manufactures, produces, imports, and/or distributes products for sale.

220.  Drummond contracts with sales representatives to solicit orders for its products.

221.  Drummond compensates its sales representatives at rates which are expressed as a percentage of the dollar amount of profits.

222.  Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in 820 ILCS 120/1(1).

223.  Drummond is a "Principal", within the meaning of 820 ILCS 120/1(3).

224.  Kurt Wise contracted with Drummond as an independent contractor to solicit orders for Drummond's products in exchange for commission based compensation.

225.  Kurt Wise is a sales representative within the meaning of 820 ILCS 120/1(4).

226.  The Bonus Agreement governs the payment of commissions earned by Kurt Wise, and therefore falls within the scope of the Illinois Sales Representative Act, 820 ILCS 120, *et seq.*

227.  Wise's Vested Balance depicted in Exhibit J is a commission which has become "due and payable" within the meaning of 820 ILCS 120, *et seq.*

228.  To date, Drummond has failed and refused to remit the Vested Balance to Kurt Wise.

229.  As a result of Drummond's failure to remit payment of Wise's Vested Balance, in accordance with 820 ILCS 120/3 Drummond is liable to Wise for exemplary damages of up to three times the amount of the Bonus Commissions owed to Wise, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff Kurt Wise respectfully prays this Court enter judgment in favor of Kurt Wise and against Drummond American Corporation in the amount of One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63), together with exemplary damages in the amount of Five Thousand Eleven Dollars and Eighty-Nine Cents ($5,011.89), together with an award of Kurt Wise's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XIV – PLAINTIFF KURT WISE'S  CLAIM FOR RECOVERY OF BENEFITS UNDER  THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 20 U.S.C. § 1001, *et seq.*

230.  Kurt Wise restates and realleges the above paragraphs 1-14 and 171-229 as if fully set forth herein.

231.  Drummond is an "employer" within the meaning of 29 U.S.C. § 1002 (5).

232.  The Bonus Agreement is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002 (2)(A).

233.  The Bonus Agreement is an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. § 1002 (3).

234.  Kurt Wise is a former "employee" of Drummond within the meaning of 29 U.S.C. § 1002 (6).

235.  Kurt Wise is eligible to receive benefits under the Bonus Agreement, and Wise is therefore a "participant" within the meaning of 29 U.S.C. § 1002 (7).

236.  The terms of the Bonus Agreement designate that Kurt Wise is entitled to benefits thereunder, and as a result Kurt Wise is a "beneficiary" within the meaning of 29 U.S.C. § 1002 (8).

237.  Following Wise's termination from Drummond, Wise became entitled to receive 100% of the Vested Balance under the Bonus Agreement.

238.  Drummond has failed and refused to remit the Vested Balance to Wise.

239.  Wise brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due from Drummond under the terms of the Bonus Agreement.

WHEREFORE, Plaintiff Kurt Wise respectfully prays this Court enter judgment in favor of Kurt Wise and against Drummond American Corporation in the amount of One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63), together with an award of Kurt Wise's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XV – PLAINTIFF KURT WISE'S  CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION

240.  Kurt Wise restates and realleges the above paragraphs 1-14 and 171-239 as if fully set forth herein.

241.  Drummond has materially breached the Bonus Agreement by failing and refusing to remit payment of Wise's Vested Balance.

242.  As a result of Drummond's breach of the Bonus Agreement, Wise has been damaged in the amount of One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63).

WHEREFORE, Plaintiff Kurt Wise respectfully prays this Court enter judgment in favor of Kurt Wise and against Drummond American Corporation in the amount of One Thousand Six Hundred Seventy Dollars and Sixty-Three Cents ($1,670.63), together with an award of Kurt Wise's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XVI  – REQUEST BY JAMES SHORE AND CONTINENTAL RESEARCH CORPORATION FOR DECLARATORY JUDGMENT AGAINST DRUMMOND AMERICAN CORPORATION -- 28 U.S.C. § 2201

243.  James Shore and Continental restate and reallege the above paragraphs 1-14 as if fully set forth herein.

244.  Between 1997 and 2007, James Shore was an independent sales agent for Drummond.

245.  During his tenure with Drummond, Shore sold Drummond products to state and federal governmental entities, schools, churches, institutions, municipalities and private companies in the State of Tennessee.

246.  The products sold by Shore on behalf of Drummond were common chemical products that are offered through many different distributors nationwide under private label.

Upon information and belief, none of the products sold by Shore on behalf of Drummond were unique to Drummond.

247.  During his ten-year sales agency relationship with Drummond, Shore developed a substantial customer base for himself primarily through the use of cold calling and self generated referrals.

248.  None of Shore's regular customers were pre-existing customers of Drummond, and similarly none of Shore's regular customers were developed through the use of Drummond provided referrals.

249.  Upon information and belief, all of the customers developed by Shore during his affiliation with Drummond lacked any sort of product loyalty, brand loyalty, or company loyalty, for the products that they customarily purchased from Shore.

250.  Upon information and belief, all of the customers developed by Shore during his affiliation with Drummond also purchased products from competitors of Drummond.

251.  Shore was terminated from Drummond without cause on or about March 20, 2007.

252.  On or about April 23, 2007, James Shore entered into a sales agent relationship with Continental, whereby Shore agreed to sell Continental products in the State of Tennessee and surrounding territories, in exchange for commission-based compensation from Continental.

253.  Shore's sales territory on behalf of Continental is similar to the sales territory in which he sold Drummond products.

254.  Some of the products offered by Continental are similar or identical to products offered by Drummond, albeit labeled differently.

255.  In an effort to sell Continental Products in the State of Tennessee, Shore will presumably encounter and solicit many of the same customers to which he sold products on behalf of Drummond.

256.  After Shore became a sales agent for Continental, Drummond sent a letter to Shore, with a copy to Continental (hereinafter the "June 5, 2007 Letter to Shore"), reminding each of them of Shore's alleged non-competition obligations under Drummond's 'Agreement with Independent Sale Agent' (hereinafter the "Shore Non-Compete Agreement").  A copy of the June 5, 2007 Letter to Shore is attached hereto as Exhibit "K" and incorporated herein by reference thereto.  A copy of the Shore Non-Compete Agreement is attached hereto as Exhibit "L" and incorporated herein by reference thereto.

257.  After Continental received its copy of the June 5, 2007 Letter to Shore, Drummond (by and through legal counsel) made it clear to Continental and Shore's attorneys that Drummond intended to hold Continental and Shore legally responsible for any failure of Shore to abide by the terms of the Shore Non-Compete Agreement, and that the solicitation by Shore of customers encountered during Shore's affiliation with Drummond would be deemed a breach of the Shore Non-Compete Agreement.

258.  Despite Drummond's threats of legal action, Continental and Shore insist that the non-competition provisions of the Shore Non-Compete Agreement are unenforceable on grounds that such non-competition provisions are not necessary to support any legitimate business interest of Drummond, and on grounds that Shore was terminated by Drummond without cause.

259.  The non-competition provisions of the Shore Non-Compete Agreement (hereinafter the Non-Competition Provisions") appear in Section 3(d), Subsections (i), (ii), (iii), and (iv), and read as follows:

(j)  During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof, whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not, directly or indirectly, for or on behalf of himself or any person, firm or entity solicit orders from or sell to any customer whom or which he solicited or sold on behalf of COMPANY during the last 12 months of his relationship with COMPANY, any products competitive to those distributed by COMPANY. Products competitive to those distributed by COMPANY are those which are substantially similar to or serve substantially similar functions as those products listed in COMPANY'S Sales Kit, Catalogs and Manuals furnished to Agent from time to time.

(ii) During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof, whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not disclose to any person, firm or entity other than COMPANY or otherwise make use of or, through failure to exercise due care and diligence, cause or permit the unauthorized use of the names, Customer Information, or any other information concerning any of the customers that he solicited or sold during

his affiliation with Company, whether such names, Customer Information or other information were furnished to him by COMPANY or developed by him in the course of his affiliation with COMPANY.

(iii)   AGENT shall not, at any time or in any place, disclose to any person, firm or entity or permit any of the same to be copied or in any manner furnish or otherwise make use of the Confidential Information and Trade Secrets or any other materials, Merchandise or Advertising Matter furnished to or received by him from COMPANY or assembled or compiled by him in the course of his affiliation with COMPANY, except as is necessary and appropriate to the solicitation of orders for COMPANY.

(iv)   During the term of his independent sales agency hereunder and at all times thereafter, AGENT shall not disclose to any person, firm or entity other than COMPANY any techniques of the business of COMPANY or its methods of doing business learned or acquired by AGENT during his affiliation with COMPANY, or any other Confidential Information or Trade Secrets of Company.

260.  By its terms, The Shore Non-Compete Agreement is to be "construed, interpreted and performed in accordance with the laws of the State of Illinois."  *See*, Section 6 of the Shore Non-Compete Agreement.

261.  The Non-Competition Provisions of the Shore Non-Compete Agreement (as set forth above) are unenforceable because such provisions are not necessary to support any legitimate business interest of Drummond.

262.  Under Illinois law, in order to have a valid covenant not to compete, an employer must demonstrate that the covenant is (1) ancillary to either a valid employment contract or relationship, (2) it is supported by consideration, (3) it is reasonable in geographic and temporal scope, and (4) it is necessary to support a legitimate business interest of the employer.  *Abel v. Fox* 654 NE2d 591 (Ill. App. 4th Dis. 1995).

263.  Here (without conceding the existence of the first three prongs), Drummond cannot prove the fourth prong of the validity test with regard to the Shore Non-Compete Agreement, because Drummond does not possesses a legitimate business interest in the enforcement of the Non-Competition Provisions contained within the Shore Non-Compete Agreement.

264.   Illinois recognizes two general situations where a legitimate business interest may be found for purposes of enforcing a covenant not to compete: 1) Where by the nature of the business, the employer has a near-permanent relationship with its customers and but for an individuals' employment, [the former employee] would not have had contact with the customers, or 2) where the former employee learned trade secrets or acquired other confidential information and subsequently tried to use it for his own benefit.  *Label Printers v. Pflug* 564 NE 2d 1382, 1387 (Ill. App. 2nd Dist 1989).

265.  Because Drummond lacks any sort of near-permanent relationship with its customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Shore Non-Compete Agreement.

266.  The Illinois Courts have held that a "near-permanent relationship" is generally absent from sales related businesses. *Springfield Rare Coin Galleries v. Mileham* 620 NE 2d 479, 488 (Ill. App. Ct 4th Dist. 1993).  In addition, the Illinois Courts have held that a near permanent relationship is generally absent in a business which does not engender customer loyalty by providing a unique product, or where customers of the business utilize several suppliers simultaneously to meet their needs.  *Id.* Where a customer's identity can be determined by reference to telephone or specialized directories, the near permanency test will also not be satisfied.  *See, e.g., Image Supplies, Inc. v. Hilmert*, 71 Ill. App. 3d 710, 714-715 (Ill. App. 1979).

267.  Here, Drummond is engaged in a highly competitive industry selling common chemical and industrial cleaning products that are readily available from other suppliers such as Continental.  Within the industry, there is no secret that the target customers for purchasing chemicals and industrial cleaning products include state and federal governmental entities, schools, churches, municipalities, institutions, private companies, etc.  Such customers are easily ascertainable by opening the telephone book in any locale.  As a result, Drummond cannot demonstrate that it possesses any sort of near permanent relationship with its customers.

268.  Drummond similarly cannot demonstrate that Shore learned "trade secrets" or acquired "other confidential information" through his affiliation with Drummond, or that he subsequently tried to use such information for his own benefit.   This is partially due to the fact that customer identities do not amount to "trade secret" or "other confidential information" under Illinois Law.  Illinois law defines "trade secret" as "information that is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use, and which is the subject of efforts that are reasonable

under the circumstances to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. Ann 1065/2.

269.  Customer lists or customer information can constitute a trade secret only where the lists or information have been developed by the employer over a number of years at great expense and kept under tight security. *Label Printers*, at 1389.  To be protectable the information must have been treated by the employer as confidential and secret, not generally available to other employees, not known by those in the trade, and not easily duplicated by reference to telephone directories or industry publications. *Id.*  Furthermore, customers must not have done business with more than one company or otherwise changed businesses so frequently that they were known to an employer's competitors. *Id.*

270.  Here, the identity of customers developed by Shore during his affiliation with Drummond cannot amount to a "trade secret" or "other confidential information" because Drummond did not keep such customers' identities under tight security; because Drummond did not incur any great expense in helping Shore develop his customers;  because the customer identities are easily ascertainable by reference to telephone directories and industry publications; and because, upon information and belief, customers encountered by Shore during his affiliation with Drummond conducted business with more than one company or otherwise changed businesses so frequently that they were already known to Drummond's competitors.

271.  Because Drummond lacks any sort of near-permanent relationship with customers, and because customer identities do not constitute "trade secrets" or "other confidential information", it cannot be said under Illinois Law that Drummond possesses any sort of legitimate business interest in the enforcement of the Non-Competition Provisions of the Shore Non-Compete Agreement.

272.  Because Drummond lacks a legitimate business interest in the enforcement of the Non-Competition Provisions of the Shore Non-Compete Agreement, those provisions are unenforceable under Illinois law.

273.  Notwithstanding Drummond's lack of legitimate business interest in the enforcement of the Non-Competition Provisions of the Shore Non-Compete Agreement, the fact that Shore was terminated from Drummond without cause provides an additional basis for this court to decree that the Non-Competition Provisions of the Shore Non-Compete Agreement are unenforceable.

274.  The law in Illinois is not settled regarding the enforceability of non-compete clauses where an individual is terminated without cause.  However, logic dictates that a restrictive covenant that becomes effective when an employee is terminated without cause is not reasonably necessary to protect an employer's good will.  This is because a company's goodwill can be protected by not dismissing a good employee.  Thus, the imposition of a restrictive covenant following such a dismissal serves only the purpose of preventing competition – an insufficient justification for enforceability.  *See Rao v. Rao,* 718 F.2d 219, 224 (7th Cir. 1983).

275.  Because Drummond failed to provide any valid basis for terminating Shore after ten years, this court should follow the principle noted in *Rao*, *supra*, thus finding that the Non-Competition Provisions of the Shore Non-Compete Agreement are unenforceable on grounds that Shore was not terminated for cause.

276.  Shore and Continental are entitled to a declaratory judgment decreeing that the Non-Competition Provisions of the Shore Non-Compete Agreement are unenforceable, and decreeing that neither Shore nor Continental owe any legal duty to Drummond to refrain from

selling Continental products to customers that Shore encountered during his affiliation with
Drummond.

WHEREFORE, Shore and Continental pray this Court for a declaratory judgment
decreeing that the Non-Competition Provisions of the Shore Non-Compete Agreement are
unenforceable, and decreeing that neither Shore nor Continental owe any legal duty to
Drummond to refrain from selling Continental products to customers that Shore encountered
during his affiliation with Drummond, and for such other and further relief as the court deems
just and proper under the circumstances.

## COUNT XVII – PLAINTIFF JAMES SHORE'S  CLAIM FOR BREACH OF THE TENNESSEE SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- TENN. CODE ANN § 47-50-114 *ET SEQ.*

277.  James Shore restates and realleges the above paragraphs 1-14 and 243-276 as if
fully set forth herein.

278.  Drummond is an Illinois Corporation that manufactures, produces, imports, and/or
distributes products for wholesale.

279.  James Shore is an individual resident of the State of Tennessee.

280.  James Shore was retained by Drummond as a sales representative to solicit
wholesale orders for Drummond's Products in the State of Tennessee.

281.  Drummond regularly contracts with sales representatives to solicit orders for its
products.

282.  Drummond pays its sales representatives based upon rates which are expressed as a
percentage of the dollar amount of orders or sales.

283.  James Shore is a sales representative within the meaning of Section 47-50-114(a)(3) of the Tennessee Statutes.

284.  Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in Section 47-50-114(a)(1) of the Tennessee Statutes.

285.  Drummond is a "Principal", within the meaning of Section 47-50-114(a)(2) of the Tennessee Statutes.

286.  In 1997, Shore and Drummond entered into an agreement entitled Independent Sales Agent's Security Bonus Program (hereinafter the "Bonus Agreement").  Upon information and belief, a true and accurate copy of the Bonus Agreement is attached hereto as Exhibit "M" and incorporated herein by reference thereto.

287.  In exchange for Shore's continued sales efforts on behalf of Drummond, pursuant to the terms of the Bonus Agreement Drummond agreed to set aside and pay Shore an additional four percent (4%) of Shore's net commissions earned each year.

288.  The Bonus Agreement governed the payment of commissions earned by James Shore, and therefore falls within the purview of Section 47-50-114 of the Tennessee Statutes.

289.  The Bonus Agreement states that payment of amounts credited to an Agent's bonus account shall be "payable to Agent or his or her designated beneficiary following termination of the agency relationship . . ."

290.  Following Shore's termination from Drummond, Shore requested that Drummond provide him with a copy of his 2006 year-end statement depicting the vested balance (hereinafter the "Vested Balance") in Shore's account.  To date, Drummond has failed and refused to provide Shore with a 2006 year end statement.

291.  Upon information and belief, the Vested Balance in Shore's account, exceeds Thirty Thousand Dollars ($30,000.00).

292.  The Vested Balance is a commission that is now "due" within the meaning of Section 47-50-114(b) of the Tennessee Statutes.

293.  To date, Drummond has failed and refused to remit the Vested Balance to James Shore.

294.  As a result of Drummond's failure to remit payment of Shore's Vested Balance, in accordance with Section 47-50-114(d) of the Tennessee Statutes Drummond is liable to Shore for exemplary damages in an amount up to treble the amount of Shore's Vested Balance, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff James Shore respectfully prays this Court enter judgment in favor of James Shore and against Drummond American Corporation in an amount to be determined at trial, together with exemplary damages in an amount up to treble the amount of Shore's Vested Balance, together with an award of James Shore's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XVIII – PLAINTIFF JAMES SHORE'S  CLAIM FOR BREACH OF THE ILLINOIS SALES REPRESENTATIVE ACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 820 ILCS 120

295.  James Shore restates and realleges the above paragraphs 1-14 and 243-294 as if fully set forth herein.

296.  Drummond is an Illinois Corporation that manufactures, produces, imports, and/or distributes products for sale.

297. Drummond contracts with sales representatives to solicit orders for its products.

298. Drummond compensates its sales representatives at rates which are expressed as a percentage of the dollar amount of profits.

299. Drummond compensates its sales representatives in whole or in part by "Commission", as that term is defined in 820 ILCS 120/1(1).

300. Drummond is a "Principal", within the meaning of 820 ILCS 120/1(3).

301. James Shore contracted with Drummond as an independent contractor to solicit orders for Drummond's products in exchange for commission based compensation.

302. James Shore is a sales representative within the meaning of 820 ILCS 120/1(4).

303. The Bonus Agreement governs the payment of commissions earned by James Shore, and therefore falls within the scope of the Illinois Sales Representative Act, 820 ILCS 120, *et seq.*

304. Shore's Vested Balance is a commission which has become "due and payable" within the meaning of 820 ILCS 120, *et seq.*

305. To date, Drummond has failed and refused to remit the Vested Balance to James Shore.

306. As a result of Drummond's failure to remit payment of Shore's Vested Balance, in accordance with 820 ILCS 120/3 Drummond is liable to Shore for exemplary damages of up to three times the amount of the Bonus Commissions owed to Shore, as well as reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff James Shore respectfully prays this Court enter judgment in favor of James Shore and against Drummond American Corporation in an amount to be determined at trial, together with exemplary damages of three times the amount of Bonus

Commissions owed to Shore, together with an award of James Shore's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XIX – PLAINTIFF JAMES SHORE'S  CLAIM FOR RECOVERY OF BENEFITS UNDER  THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION -- 20 U.S.C. § 1001, *et seq.*

307.  James Shore restates and realleges the above paragraphs 1-14 and 243-306 as if fully set forth herein.

308.  Drummond is an "employer" within the meaning of 29 U.S.C. § 1002 (5).

309.  The Bonus Agreement is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002 (2)(A).

310.  The Bonus Agreement is an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. § 1002 (3).

311.  James Shore is a former "employee" of Drummond within the meaning of 29 U.S.C. § 1002 (6).

312.  James Shore is eligible to receive benefits under the Bonus Agreement, and Shore is therefore a "participant" within the meaning of 29 U.S.C. § 1002 (7).

313.  The terms of the Bonus Agreement designate that James Shore is entitled to benefits thereunder, and as a result James Shore is a "beneficiary" within the meaning of 29 U.S.C. § 1002 (8).

314.  Following Shore's termination from Drummond, Shore became entitled to receive 100% of the Vested Balance under the Bonus Agreement.

315. Drummond has failed and refused to remit the Vested Balance to Shore.

316. Shore brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due from Drummond under the terms of the Bonus Agreement.

WHEREFORE, Plaintiff James Shore respectfully prays this Court enter judgment in favor of James Shore and against Drummond American Corporation in an amount to be determined at trial, together with an award of James Shore's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT XX – PLAINTIFF JAMES SHORE'S  CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT DRUMMOND AMERICAN CORPORATION

317. James Shore restates and realleges the above paragraphs 1-14 and 243-316 as if fully set forth herein.

318. Drummond has materially breached the Bonus Agreement by failing and refusing to remit payment of Shore's Vested Balance.

319. As a result of Drummond's breach of the Bonus Agreement, Shore has been damaged in an unknown amount exceeding Thirty Thousand Dollars ($30,000.00).

WHEREFORE, Plaintiff James Shore respectfully prays this Court enter judgment in favor of James Shore and against Drummond American Corporation in an amount to be determined at trial, together with an award of James Shore's reasonable attorneys' fees and court costs, and for such other and further relief as the court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to FED. R. CIV. P. 38, Plaintiffs hereby demand a trial by jury on all issues triable by right to a jury.

Respectfully submitted,

AEGIS PROFESSIONAL SERVICES

Dated:  June 19, 2007

By:  _____
Nicholas B. Schopp #502106
#2 North Meramec
Clayton, Missouri 63105
(314) 454-9100 Ext. 5
(314) 454-9110 fax